EDER v. POST & McCORD.

(Supreme Court, Appellate Division, Second Department.  December 30, 1909.)

NEGLIGENCE (§ 126*)—EVIDENCE TO EXPLAIN ACCIDENT—COMPETENCY.

Defendant, in an action for injury from the falling of its derrick in work on a building, claimed by plaintiff to be due to improper support of the derrick, may, as tending to explain the cause of the fall, the same support having been used for two weeks before, during which greater weights had been lifted, and the wedges which held in place the supporting timbers, which fell out, having, on examination shortly before the accident, been found to be all right, show that its employés were nonunion men, its union men having struck during the progress of the work; that the employés of the other contractors on the building were union men: that some of them were working close to the supporting timbers; that a man with a two-pound hammer could loosen the wedges; that, if the wedges were loosened, the supporting timbers were liable to slip out of place; and that twice before, after the strike, the derrick had been tampered with by ropes being cut; the occurrences, the tampering with the derrick so as to affect its safety, being similar, and it being immaterial that the methods employed were not identical, and that in the former instances the attempts failed, and it not being necessary to show who had tampered with the derrick on either occasion, it being enough to show circumstances from which it might reasonably be inferred that some one had done so.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 245; Dec. Dig. § 126.*]

Appeal from Trial Term, Kings County.

Action by Frederick R. Eder against Post & McCord.  From a judgment for defendant, and from an order denying a motion for new trial, plaintiff appeals.  Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, BURR, THOMAS, and RICH, JJ. .

Benjamin Scharps (Reginald H. Schenck, on the brief), for appellant.

Eugene Lamb Richards, Jr. (Rutherford B. Meyer, on the brief), for respondent.

BURR, J.  On the 27th of January, 1906, plaintiff was in the employ of the Otis Elevator Company, and was engaged in installing elevators in a building on Fifth avenue, between Thirty-Fourth and Thirty-Fifth streets, in the borough of Manhattan.  Defendant had the contract for the iron and steel construction work upon the same building.  The building was being constructed in sections, and the portion fronting on Fifth avenue, so far as the iron and steel frame was concerned, had been completed up to the ninth story.  On the top of this completed portion defendant had placed a derrick, the boom of which swung over Thirty-Fifth street.  It was used to raise and place in position in the newer part of the building massive iron columns.  Similar columns had been placed in the completed portion of the building, which supported heavy girders that ran east and west, parallel with Thirty-Fifth street and at right angles to Fifth avenue.  From these girders lighter iron floor beams ran in a northerly and southerly di-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

rection. These were bolted or riveted into the transverse girders. Plaintiff was at work upon a platform on the Thirty-Fifth street side of the building, which was about on a level with the street. Underneath this was the subcellar, about 35 or 40 feet deep. On the day in question defendant, with the aid of this derrick, was raising from Thirty-Fifth street one of these iron columns to place it in position. When it was about 8 or 9 feet higher than the platform where plaintiff was at work, although not directly over it, the support of the derrick gave way, and the mast came down through the floor on which it stood for several feet. At that point some part of the derrick caught upon the framework of the building, and it remained suspended there; but the column fell, and in its fall it struck the end of the platform where plaintiff was at work, and he was thrown into the subcellar below and sustained injuries, to recover for which this action was brought.

By its verdict the jury have declared that defendant was guilty of no negligence in the construction of the derrick. Upon this appeal plaintiff contends that the jury was influenced toward its conclusion by evidence erroneously admitted. The negligence charged against defendant was in failing to provide a proper foundation or support for the derrick. There was a sharp conflict of evidence upon this point. Plaintiff contended that it had for its only support the light iron floor beams, that there was no shoring or bracing of any kind under these beams, and that after the accident it appeared that the "lug" was split at the rivet heads and that several of the beams had given way. A lug is "at the angle where the floor beams are riveted or bolted to the girders." There was also evidence from which the jury might have found that these floor beams were not intended to bear any such strain as that caused by the weight of the derrick and the column which was being raised, and that they were inadequate for such purpose. Defendant contended that, while the base of the derrick did rest upon the beams on the ninth story, beneath these beams, and between them and those upon the eight story, there were heavy shoring timbers, strongly braced and wedged, so as to hold them firm, and that between the eighth and seventh stories there was additional shoring and bracing of a similar character, and that as thus shored and braced the foundation of the derrick was sufficiently strong to bear a strain very much greater than that imposed upon it on the day in question. It appeared without contradiction that the derrick had been in the same position for about two weeks before the day of the accident, and that in the interval on several occasions weights as great or greater than that which the derrick was then carrying had been safely raised. Under these shoring timbers wedges had been driven to cause the timber to set "tight to the beam," so that there should be no spring. Defendant introduced evidence to the effect that a very short time before the acciden happened these wedges were examined and found to be all right, and that at the moment of its happening the shoring between the eighth and ninth stories, immediately under the base of the derrick, was seen to fly out of place, and that thereupon the foundation gave way. Immediately after the accident this shoring timber was found

in the cellar, unbroken, except as to some slight splintering caused by its fall. There was no evidence that the floor beams on the seventh or eighth floor gave way, and there was evidence that after the accident the shoring between those floors was intact and in place.

Defendant proved that during the progress of this work, and some time before the day of the accident, its employés had struck, that the strike was then unsettled, and that the men employed by it on the day in question were nonunion men, while the men employed by the other contractors upon the building, several hundred in number, were members of various trade unions, and that some of these men were engaged in work in close proximity to the shoring of this derrick. It also proved, and the evidence was uncontradicted, that a man with a two-pound hammer could loosen these wedges. If the wedges were loosened, the shoring timbers were liable to slip out of place. Defendant was then permitted to prove that on two previous occasions during the progress of the work, and after the strike had been declared, derricks used by them upon the work had been tampered with. On the first occasion the guy ropes supporting the derrick had been cut in four places, and on the second occasion the strand of the ropes was opened up and a knife put through the heart of it, so that "just the outside of the strand held it together."

Plaintiff urges that the admission of this evidence was error sufficient to require a reversal of the judgment We think not. He based his claim of negligence upon two alleged facts: First, that the derrick did fall; and, second, that it was improperly supported. The first was admitted; the second was disputed. Plaintiff contends that from the former fact, in the absence of explanation, the latter might be inferred, and that the question of defendant's negligence then became one for the jury. Any fact, therefore, tending to explain the cause of the fall is a relevant fact. When the question is as to the cause of a certain occurrence, the fact that similar occurrences have under like conditions been produced by a particular cause is deemed to be relevant. Stephen's Digest of Evidence (Chase's 2d Ed.) 34, note; Rockford Gaslight Co. v. Ernst, 68 Ill. App. 300; Evans v. Keystone Gas Co., 148 N. Y. 112, 42 N. E. 513, 30 L. R. A. 651, 51 Am. St. Rep. 681; Faucett v. Nichols, 64 N. Y. 377.

There were "like conditions" at the time of the accident and at the time of the previous occurrences. On each occasion a strike was in progress, and it is matter of common knowledge that at such times a feeling of hostility exists on the part of the striking employés, not only toward their former employers, but also toward those who may have been employed to fill their positions. Particularly does this hostility exist if the striking employés are affiliated with trade unions, and those who have taken their places are not, and it often extends to members of similar labor organizations who sympathize with the purposes and objects of the strikers. Not infrequently, we regret to say, this hostility manifests itself in acts of violence. On each occasion there was also the same opportunity to give expression to this hostility, due to the close proximity to the defendant's appliances of union men engaged in other trades. The occurrences were also similar in char-

acter. The "occurrence" was tampering with the derrick, so as to affect its safety. The fact that the methods employed were not identical would not necessarily make any difference, since the result sought to be effected was the same. The fact that in the former instances the attempt failed, while in the latter it succeeded, would only indicate a difference in degree and not in kind. See Faucett v. Nichols, supra.

When we come to consider the "particular cause" from which the occurrences followed, it is true that there was no evidence from which the jury could determine who had tampered with the derrick on either occasion; but it was not necessary for the defendant to show this. It was enough to show circumstances from which it might be reasonably inferred that some one had done so. The manner of the happening of the accident tended to some extent to establish this on this occasion, since the shoring timber, wedged as it had been a short time before, would not ordinarily have slipped from its position if it had been undisturbed. Proof of motive, opportunity, and inclination to disturb it was competent, as strengthening this presumption. The evidence objected to tended to establish these. To quote from Faucett v. Nichols, supra:

"There is no fixed and definite rule by which it can be determined whether a collateral fact is so remote as to be inadmissible to support the principal fact sought to be established. The question must, to a considerable extent, be decided in each case on its own circumstances, and we are of opinion that the proof offered, to which we have referred, ought to have been admitted."

The judgment and order appealed from should be affirmed, with costs. All concur.